SUSAN J. TILLMAN, Appellant, v. CITY OF CAR-THAGE and CARTHAGE HOSPITAL ASSOCIATION.

In Banc, February 2, 1923.*

1. **CONVEYANCE: Reference in Deed to Other Instruments.** It is competent for the grantor to bring into his deed by reference and as a part of itself the whole or any designated part of another instrument, and when such other instrument or designated part is brought in by reference the deed must be construed in connection therewith.

2. ————: **Reference in Deeds to Previously Executed Will: Delivery: Subsequent Conveyance.** Where the owner of lands had executed her will by which she devised them to a named city in trust, to be used for the erection and maintenance of a public hospital, as a memorial to a deceased son, with specific directions for the use of the fund and the subsequent establishment and naming of the hospital, a deed subsequently made by her by which she conveyed the same lands to the city and in which she declared that "this deed is made for the purpose of confirming my intentions and purposes as expressed with respect to the above described land as said purposes are set forth in my last will and testament," identifying it by its date, by such reference, incorporated in itself all the provisions of the will in which she expressed her intentions and purposes of the devise as fully as if they had been written into the deed in the very words in which they were expressed in the will, and the deed, having been delivered, conveyed a present and fixed right of a future enjoyment of the lands for the uses and purposes set out in the will, the enjoyment of the city being postponed by operation of law until her death or subject to her life estate. And a subsequent quit-claim deed by which she conveyed said lands to her daughter conveyed only her life estate.

3. ————: ————: **Testamentary: Delivery.** Where the owner of lands in three different counties by her duly executed will devised them

*NOTE: Opinion filed December 30, 1922; motion for rehearing overruled February 2, 1923; dissenting opinion of WALKER, J., filed February 2, 1923.

Tillman v. City of Carthage.

to the city of Carthage, in trust, for the establishment and maintenance of a public hospital, and subsequently executed four deeds conveying the lands to the city, in which it was recited that they were made for the purpose of confirming her intentions and purposes as expressed in said will, and inclosed them in a sealed envelope on which she wrote: "This envelope contains four warranty deeds, and the same with enclosures is hereby delivered to J. E. Lang for the purpose of safe keeping; and upon my demise he is to deliver each of the enclosed deeds to the grantee named therein, to-wit, the city of Carthage, Mo.," and signed her name thereto and delivered the envelope to the said J. E. Lang, who was secretary of the hospital association, there was complete delivery of the deeds, and they were not testamentary in character, but were a present investment of a future estate, or of a remainder subject to her life estate, in the city, and were not subject to revocation.

*Held*, by WALKER, J., dissenting, that the words written on the envelope show that the purpose of the deposit was for safe-keeping, and that the time of the delivery was to be the grantor's demise; and therefore the deeds did not pass the title *in praesenti*, but were testamentary in character, and a subsequent conveyance, while they remained in the hands of the depositary, carried, not only the grantor's life estate, but the entire title to her grantee.

4. ——: ——: ——: ——: Explained and Enforced by Oral Testimony: Continued Dominion Over Lands. Testimony that the grantor, in deeds reciting that they were made for the purpose of confirming a devise of the lands to the city in trust for the establishment and maintenance of a public hospital, which she had inclosed in a sealed envelope upon which she had written that the envelope "with the enclosures is hereby delivered to" a named depositary "for the purpose of safely keeping the same, and upon my demise he is to deliver each of the enclosed deeds to the grantee named therein," which was the city, stated to the depositary and the attorney who drew the deeds, at and prior to their execution and at the time she delivered the envelope to the depositary, that she feared the courts might set aside her will and defeat her plan to establish the hospital as a memorial to her deceased son; that she wanted the provision for the hospital so safeguarded that nothing, not even her own act, would prevent her wishes from being carried out; that she did not want to put the deeds on record, or have it become known until after her death that she had conveyed them to the city, and that she desired to keep their execution and delivery secret, lest knowledge of them would make

Tillman v. City of Carthage.

trouble for her, which she wished to avoid, tended to show the irrevocable character of her act in delivering the deeds to the depositary, and established as a fact that she parted, at that time, with all control over them.

. *Held*, by WALKER, J., dissenting, that the evidence establishes that the business relations of the depositary with the grantor were confidential in character, and were those of an agent coupled with those of an adviser in the conduct of her business; that in him she reposed the custody and care of all her papers, and the deeds were received, held and kept by him in the same manner; that he wrote small checks on her account, looked after her lands, collected her interest and rents, leased her farms, paid her taxes and looked after her insurance, both before and after she executed the deeds; that after. she had deposited them with him she twice, in writing, demanded the deeds, and he gave her her other papers, but retained the deeds, because he considered other parties were interested in them and he could not.turn them over without their consent; and these and other salient facts establish that she did not part with dominion over the deeds, and that conclusion is reinforced by the indorsement on the envelope that they were delivered to the depositary for safe keeping, to be delivered to the city upon her demise; and complete surrender of entire dominion over a deed being necessary to its delivery, there was no delivery; and delivery being the life of a deed and necessary to the present investment of a future estate in lands, the deeds were testamentary in character, and were in effect revoked by her subsequent deeds conveying the lands to her daughter.

Appeal from Jasper Circuit Court. —*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*Howard Gray* and *W. J. Orr* for appellant.

(1) The will of 1900, the first codicil of 1903, the second codicil of 1908, and the four instruments (or deeds) of November 2, 1914, and the endorsement on the envelope, constitute one instrument and should be so construed. Agan v. Shannon, 15 S. W. 755; Waldemeyer v. Loebig, 121 S. W. 75; Hughes v. Bent, 81 S. W. 931;

Shuslky v. Shulsky, 157 Pac. 407; Jacobs v. Jacobs, 106 Pac. 898; Whitney v. Harrington, 85 Pac. 84; Watson v. Hinson, 73 S. E. 1089; Chambers v. Chambers, 28 N. C. 226; Cook v. Hensler, 107 Pac. 178; 40 Cyc. 1094; 68 L. R. A. 354, note; 8 R. C. L. 931. (2) When the will, the two codicils, and the two deeds under which the city claims title are construed together as one instrument, as in law they should be read and construed, they are clearly testamentary and did not pass any estate to the city of Carthage. Hohenstreet v. Segelhorst, 227 S. W. 80; Murphy v. Gabbert, 166 Mo. 596; Aldridge v. Aldridge, 202 Mo. 565; Griffin v. McIntosh, 176 Mo. 392; Givens v. Ott, 222 Mo. 411; Terry v. Glover, 233 Mo. 545; Goodale v. Evans, 263 Mo. 231; Pinkham v. Pinkham, 55 Neb. 729; Turner v. Scott, 51 Pa. 126; Leaver v. Gauss, 62 Iowa, 314; Donald v. Nesbit, 89 Ga. 290; Gigley v. Souvey, 45 Mich. 370; Nichols v. Emery, 109 Cal. 323; Conrad v. Douglas, 59 Minn. 498; Hazelton v. Reed, 46 Kan. 73; Hanning v. Hanning, 24 S. W. 695; Cunningham v. Davis, 62 Miss. 366; Sharp v. Hall, 86 Ala. 110; Carlton v. Cameron, 54 Tex. 72; Bright v. Adams, 57 Ga. 240; Blackwell v. Blackwell, 67 Ga. 268; Sperker v. Bolster, 66 Ga. 317; Baxter v. Chapman, 94 S. E. 544; Sarter v. Sarter, 39 Miss. 760; Cox v. Reed, 74 So. 330; Broffee v. LaFils, 149 N. W. 1028; Appeal of Skerrett, 8 Pac. 181; Smith v. Thayer, 125 N. E. 171. (3) The trial court erred in permitting witness Samuel McReynolds to testify to what Mrs. McCune said to him in 1903 when he drew the first codicil to her will because: (a) He was her legal adviser and acted as her attorney. R. S. 1909, sec. 6362; 4 Wigmore on Evidence, sec. 2290-2329; Jones on Evidence, sec. 748; Cromack v. Heathcotte, 2 B. & B. 4; Gross v. Higgins, 50 Mo. 353; Hull v. Lyon, 27 Mo. 570; Andrew v. Simms, 33 Ark. 771; Fox v. Dpear, 78 Ark. 71. (b) This codicil constituted a part of her will and being in writing as the statute requires and being unambiguous cannot be enlarged or limited by parol. R. S. 1909, sec. 537. (c) The will and codicil

create an express trust which can only be "manifested and proved" by writing signed by the creator of the trust. R. S. 1909, sec. 2868; Perry on Trusts (6 Ed.) sec. 83; Ferguson v. Robinson, 258 Mo. 113; Pitts v. Weakley, 155 Mo. 133; Crowley v. Crofton, 193 Mo. 431; Hillman v. Allen, 145 Mo. 638; Thompson v. Thompson, 211 S. W. 52; Hayes v. Hayes, 242 Mo. 155; Heil v. Heil, 194 Mo. 665; Mungan v. Wheeler, 241 Mo. 376; Hall v. Small, 178 Mo. 629; Hunter v. Briggs, 162 Mo. 204. (d) Said testimony was hearsay. (4) For the same reason the court erred in permitting witness Samuel McReynolds to testify to what Mrs. McCune said to him before he drew the four deeds of November 2, 1914, and what was said when these were executed and left with Mr. Lang. And the testimony was prejudicial and erroneous for the additional reason that these four deeds are unambiguous and the endorsement on the envelope containing these is unambiguous. Cases, supra.

*Frank R. Birkhead, George W. Crowder, McReynolds & McReynolds* and *John H. Flanigan* for respondent.

(1) Delivery is essential to the validity of a deed. The deeds here considered were legally delivered, since delivery to a third party is good, though final delivery to the grantee is to be suspended until the grantor's death. Standiford v. Standiford, 97 Mo. 231; Sneathen v. Sneathen, 104 Mo. 210; Williams v. Latham, 113 Mo. 165; Allen v. De Groodt, 105 Mo. 442; Hamilton v. Armstrong, 120 Mo. 597; Cook v. Newby, 213 Mo. 289; Schooler v. Schooler, 258 Mo. 83; Fenton v. Fenton, 261 Mo. 202; Ells v. Railroad Co., 40 Mo. App. 165; Abbe v. Justus, 60 Mo. App. 300; Marshall v. Hartzfelt, 90 Mo. App. 178; Seibel v. Higham, 216 Mo. 131; Maxwell v. Harper, 98 Pac. 756; St. Clair v. Marquell, 67 N. E. 693; Stout v. Rayl, 45 N. E. 515; Bury v. Young, 33 Pac. 338; Ruiz v. Dow, 45 Pac. 867; Shuer v. Rodenback, 65 Pac. 298; Arnegaard v. Arnegaard, 41 L. R. A. 258; Smith

v. Smith, 161 Pac. 495.  See also the cases following, and
the exhaustive editorial notes thereto appended.  Munro
v. Bowles, 54 L. R. A. 865; Penties v. Hays, 9 L. R. A.
(N. S.) 224; Renehan v. McAvoy, 28 L. R. A. (N. S.)
941.  Acceptance of the deeds under the circumstances
here existing is presumed.  In re Soulard's Estate, 141
Mo. 642; Kingman & Co. v. Cornell Co., 150 Mo. 228, 312;
Fearey v. O'Neill, 149 Mo. 477; Valentine v. Decker,
43 Mo. 585; Major v. Hill, 13 Mo. 172; Duval v. Raisin,
7 Mo. 449, 54 L. R. A. 897, note; Eyrick v. Hetrick, 13
Pa. 488; Dawson v. Dawson, Rice Eq. 243; Cloud v.
Calhoun, 10 Rich. Eq. 358; Adams v. Adams, 31 Wall.
185, 22 L. Ed. 504; McCalla v. Bane, 45 Fed. 828; Els-
berry v. Boyken, 65 Ala. 336.  (2)  Delivery is a fact
susceptible of proof and such proof is subject to the
ordinary rules of evidence.  The proof may be oral and
the testimony of the witnesses, Lang and McReynolds,
was properly admitted in evidence.  18 C. J. 431-432;
Tumlin v. Tumlin, 195 Ala. 457; Hathaway v. Cook, 258
Ill. 92; Peterman v. Crowley, 226 S. W. 944; Wilson v.
Godlove, 34 Mo. 337; Gerhardt v. Tucker, 187 Mo. 46;
Brown v. Groves, 80 Fed. 564; Shepard v. Mendenhall,
191 S. W. 257; Comings v. Irwin, 59 S. W. 153; Max-
well v. Harper, 98 Pac. 757; Aultman v. Baggs, 50 Mo.
App. 280; Graham v. O'Fallon, 4 Mo. 338; Lang v.
Ingalls Zinc Co., 69 S. W. 288; Delgar v. Jacobs, 125
Pac. 258; In the matter of Sponner, 89 Misc. 30, 152
N. Y. Supp. 537; Caldwell v. Davis, 15 Pac. 696; Grim-
shaw v. Kent, 73 Pac. 92; Ferguson v. Ash, 150 Pac. 657;
Ex parte Gfeller, 178 Mo. 248; Thompson v. Ish, 99 Mo.
176; Glover v. Patten, 165 U. S. 294, 17 Sup. Ct. 411;
Smith v. Smith, 161 Pac. 495; 40 Cyc. 2380, note 18; 4
Wigmore on Evidence, sec. 2297.  The court will observe
that in practically every Missouri case where delivery
was in question the oral testimony of the scrivener was
admitted, and this notwithstanding there was, in most
of the case, a written memorandum as to delivery.  Said
cases being: Standiford v. Standiford, 97 Mo. 231;

Sneathen v. Sneathen, 140 Mo. 210; Williams v. Latham, 113 Mo. 165; Hamilton v. Armstrong, 120 Mo. 597; Cook v. Newby, 213 Mo. 489; Schooler v. Schooler, 258 Mo. 83. (3) The conveyances are not testamentary. There is nothing in the deeds to show that title was not to pass immediately. The deeds constitute a valid present conveyance of a future estate, and such conveyance is not testamentary. R. S. 1909, sec. 2876; Allen v. De Groodt, 105 Mo. 451; Christ v. Kuehne, 172 Mo. 118; Dozier v. Toalson, 180 Mo. 546; Simms v. Brown, 252 Mo. 58; Priest v. McFarland, 262 Mo. 229; Dawson v. Taylor, 214 S. W. 852; Maxwell v. Harper, 98 Pac. 759; Innes v. Potter, 3 A. L. R. 896, note. (a) "It is no objection to the creation and validity of a trust that the enjoyment of the beneficiary's interest is postponed, provided the legal title passes to the trustees and a present interest vests." 39 Cyc. 43, notes 30 and 31; In re Soulard's Estate, 141 Mo. 642. (b) The fact that a trust is not to be administered until after the death of the founder does not prevent a present interest passing, and does not invalidate the trust. Simms v. Brown, 252 Mo. 66; In re Podhajsky, 137 Iowa, 742; Lewis v. Curnutt, 130 Iowa, 430. (4) The trust here involved was irrevocable and it matters not that Mrs. McCune's daughter prevailed upon her to make a deed seemingly inconsistent with the trust. Such later deed was ineffectual to revoke a trust which was irrevocable. 39 Cyc. 92, 93; Womens Christian Assn. v. Kansas City, 147 Mo. 127; Ewing v. Shannahan, 113 Mo. 188; Catron v. Scarritt Collegiate Institute, 264 Mo. 723; Perry on Trusts (6 Ed.) sec. 259. (5) Knowledge on the part of the trustee is not essential to the validity of a trust. The trustee's acceptance when made relates back to the date of the trust instrument. 39 Cyc. 77, 78, 79; Jamison v. Zausch, 227 Mo. 406. (6) Plaintiff's failure to call Mrs. Lizzie A. McCune to give her testimony is a strong circumstance justifying the court in concluding that Mrs. McCune's testimony was suppressed because it would have been adverse. Willitts

Tillman v. City of Carthage.

v. Railway Co., 221 S. W. 66; McCord v. Schaff, 216 S. W. 320; Booher v. Trainer, 172 Mo. App. 376; Karne v. Railroad, 254 Mo. 175; Vannest v. Railroad, 181 Mo. App. 373; Bryant v. Lazarus, 234 Mo. 606; Tate v. Wabash Railroad, 141 S. W. 459. (7) The legal effect of the transaction was to vest a remainder in the trustee subject to a life estate in the grantor and the court properly so found. Cook v. Newby, 213 Mo. 471, 491; Bury v. Young, 33 Pac. 338; Arnegaard v. Arnegaard, 41 L. R. A. 258; Maxwell v. Harper, 98 Pac. 756; O'Day v. Meadows, 194 Mo. 588; (8) A conveyance to a beneficiary under a will is a revocation of the will *pro tanto*, and the grantee takes under the conveyance, not under the will. 40 Cyc. 1209; Marshall v. Hartzfelt, 98 Mo. App. 178; Wollery v. Wollery, 48 Ind. 523; Gage v. Gage, 12 N. H. 1271.

*Howard Gray* and *W. J. Orr* for appellant in reply.

(1) It is a well-settled rule of law that where a party fails to produce evidence exclusively within his or her control, and which is competent, material and relevant a presumption may be indulged that such evidence would not be favorable to such party. But this rule of law does not apply to one party alone. It applies to a defendant as well as to a plaintiff. Before the rule can be invoked the testimony must be under the exclusive control of the party failing to produce it. It was our contention below, and it is our contention here that parol testimony was not admissible to vary the unambiguous terms of any of the written instruments contained in this record. This sufficiently appears from our repeated objections when such evidence was offered. It was the contention of respondent's counsel that this parol testimony was competent. Both parties claim title under Mrs. McCune, and learned counsel correctly state that on the day of the trial she was at the home of her sister, a few blocks from the courthouse. She was within the jurisdic-

tion of the court and within easy reach of a subpoena. Plaintiff's counsel were content with showing a valid deed from this admitted common source. Learned counsel for defendant felt called upon to produce oral testimony to vary and change the unambiguous terms of the instruments under consideration here. On whom rested the duty, if it rested on any one, to call Mrs. McCune as a witness? There is not one word in this entire record that even furnishes the basis for a suspicion that Mrs. McCune would not have told the truth, the whole truth, and nothing but the truth had she been called by either side. Had she been called by the defendant to testify to what witness McReynolds and Lang testified to, then to be consistent and honest with the court, appellant's counsel would have objected. Then why should appellant's counsel be criticized for not taking this inconsistent and well nigh contemptuous position before the trial court? (2) There is no evidence that the plaintiff "prevailed" on her mother to make the deed. The plaintiff was a witness and learned counsel never asked her about this deed, or why, or how it was obtained. On re-direct examination she was asked why a quitclaim deed was made, and she explained that this was the same kind of a deed she made to her mother in the partition of the estate. If "plaintiff prevailed" upon her mother to make the deed (plaintiff's husband being a lawyer), why did they not "prevail" upon her to make a warranty deed? Had plaintiff desired to take any undue advantage in the matter she could have taken a general warranty deed and could have disposed of all of these lands to third parties and avoided this lawsuit. Had it been the desire of this plaintiff to secure anything beyond what the law gives her, she could have effectually destroyed this trust, whether we call the instruments creating it testamentary instruments or not. Had she not invited the defendants into court this lawsuit would not be here. It was the plaintiff who brought these instruments to open daylight and submitted them to the judgment of the law and this is all she asks and expects in this case.

DAVID E. BLAIR, J.—This case comes to Court in Banc from Division One, wherein the judges were divided in opinion. The opinion of one of the commissioners of that division was thereafter adopted as the opinion of this court. Subsequently a motion for rehearing was sustained and, after reargument, the opinion of the commissioner was rejected.

The case is a statutory proceeding to determine title to certain lands in the city of Carthage. The lands in question are part of the estate of E. T. McCune, who died intestate prior to January, 1900. Lizzie A. McCune, his widow, and his daughter, the appellant in this case, were the only heirs. In January, 1900, they partitioned the land by exchange of quitclaim deeds. The real estate here involved is the portion thus acquired by Mrs. McCune and is of large value.

The McCunes had one child, a son, who predeceased his father. He became a physician, and was associated in his practice at Carthage with one Dr. Brooks, who had devoted a fund to the establishment of a hospital in that city. After the death of her husband, Mrs. McCune determined to establish a foundation for a hospital in Carthage to the memory of her deceased son. To this end and on May 18, 1900, she executed a will, and on May 12, 1903, added a codicil, devoting her entire estate to that purpose, and from time to time thereafter expended thirty to forty thousand dollars in aid of the erection of the hospital by the Carthage Hospital Association, of which Samuel McReynolds was president and J. E. Lang secretary. It is the contention of appellant that at the suggestion of the offcers of said hospital association Mrs. McCune executed deeds to her property to be delivered to the city of Carthage at her death. The effect of such deeds will be discussed later. She executed four deeds. These were sealed in an envelope by Mrs. McCune and she wrote upon the outside thereof the following directions:

"This envelope contains four warranty deeds, and

the same with enclosures, is hereby delivered to J. E. Lang.for the purpose of safely keeping the same; and upon my demise he is to deliver each of the enclosed deeds to the grantee named therein, to-wit, the city of Carthage, Mo. In witness whereof, I have hereunto set my hand, on this second day of November, 1914. Lizzie A. McCune.''

Notwithstanding the delivery of such envelope containing the deeds mentioned in the endorsement thereon, on September 19, 1919, Mrs. McCune executed and delivered to appellant her quitclaim deeds, conveying to her the lands involved in this suit, being the same lands described in the deeds enclosed in the envelope delivered to Mr. Lang. She thereupon gave to Mrs. Tillman, the appellant, an order upon Mr. Lang for all her deeds, papers and money in his possession. He had previously been her banker and agent. He turned over to appellant everything in his possession, except the envelope containing the deeds above referred to. This he retained and refused to deliver to appellant, on the ground that he held it and its enclosures for the city of Carthage to be delivered to said city upon the death of Mrs. McCune.

On May 18, 1900, Mrs. McCune had executed a will, by which she devised the city of Carthage practically the whole of her large estate, consisting principally of the lands involved here, except certain benefactions, including a provision for appellant should she be left a widow without means of support, in trust for the erection and maintenance of a public hospital in said city, to be under the general direction and control of said city and to be named the McCune Hospital. On May 12, 1903, Mrs. McCune added a codicil to her will, which provided ''that when said hospital is built that it bear the inscription: 'To the memory of Dr. T. E. McCune, son of E. T. and Lizzie A. McCune' '' and that if she should direct said hospital or a wing of it to be built in her lifetime, then a blank slab of marble should be located in the building upon which the inscription should be carved after

her death.   Thereafter the erection of the hospital was begun and the same was completed in 1905, thirty or forty thousand dollars of the cost thereof being contributed by Mrs. McCune,  A blank slab was placed in the structure as contemplated by the terms of the codicil.

Both Lang and McReynolds, the latter being a member of the law firm of McReynolds & McReynolds, who represented the defendants at the trial, were permitted to testify, against the objection of plaintiff, in substance that the four deeds in evidence were deposited with Lang for delivery to the city after the death of the grantor, because Mrs. McCune insisted that she desired to keep secret the fact of the execution and did not, therefore, wish to permit the city to have them recorded or otherwise control them.   Said deeds were warranty deeds in ordinary form.   In one of them, which covered part of the Jasper County lands, the following clause was inserted:

"This deed is made for the purpose of confirming my intentions and purposes with respect to the above described land as said intentions and purposes are set forth in my last will and testament of date May 18, 1900, it being my desire that the fee simple title shall be vested in the party of the second part for hospital purposes as expressed and provided in said will and the codicil thereto made and executed by me on May 12, 1903, and this deed is but a re-affirmation of my original intent and purpose in placing the title to said property in the party of the second part for the uses and purposes so desired by me."

In the second deed covering the remaining Jasper County lands the following clause appears:

"The above lands are hereby conveyed for the purpose of confirming my intentions and purposes as stipulated and set forth in my last will and testament of date May 18, 1900, it being my desire that the fee simple title shall be vested in the party of the second part, in trust for hospital purposes as set forth, expressed and

provided in said last will and the codicil thereto made and executed by me on May 12, 1903. This conveyance of the above described land is also made subject to the provisions and trust expressed in my said last will and testament and codicil thereto appended, to which instruments reference is made for more definite instructions as to the nature and extent of said trust provisions which are limited and restricted to the use of the persons therein named and only to the extent and upon the conditions therein expressed.''

At the close of the trial the plaintiff asked the following declarations of law, which were given:

"1. The court declares the law to be that under the evidence in this case the instruments offered in evidence prove that the trust created thereby is a charitable trust and the court excludes all parol testimony attempting to add to or take from or in anywise explain any of the provisions or purposes of said trust or of its creation, and that all the purposes and provisions of said trust must be found and contained in the written instruments creating same.

"2. The court declares the law to be that the directions set forth on the back of the envelope offered in evidence as to the delivery of the deeds is unambiguous and speaks for itself, and cannot be enlarged or explained or in any wise affected as to the terms of the delivery by parol testimony.

"3. The court declares that under the statutes an estate in remainder cannot be created by parol, and a life estate cannot be reserved by parol, but such estates must be expressly reserved and created or must be necessarily implied from the terms of the grant alone.

"4. The court declares that the 'Carthage Hospital Association' has no interest, legal or equitable, as beneficiary or otherwise, under the deed, will and codicils read in evidence, but that the beneficiary named in those instruments constitutes an indefinite class and portion of the residents and citizens of Carthage as its citizen-

ship may change from time to time, and especially constituting those who are "unfortunate and afflicted.'"

The trial court refused to give instruction numbered 5 requested by the appellant, which was as follows:

"5. The court declares the law to be that the will and codicils referred to in the warranty deeds offered in evidence by the defendants are a part and parcel of said warranty deeds, and that in construing said warranty deeds, the court must read said will and codicils into the same as if actually contained therein, and from the said will, codicils and deeds, the court declares the law to be that they are testamentary in character and the said warranty deeds passed no title as to any of the defendants."

The trial court then ruled as follows:

"Now at the time of the decision after the orai arguments and briefs have been furnished the court, the court rules that all the oral testimony which was introduced on behalf of the defendants and admitted by the court, is admitted for the sole purpose of aiding the court in determining whether or not Lizzie A. McCune intended to and did deliver the four deeds dated November 2, 1914, to J. E. Lang to hold said deeds for the city of Carthage as grantee therein, with the intention on the part of Mrs. McCune to irrevocably divest herself of all control over said deeds, and for no other purpose."

The trial court made a finding of facts from which we quote the following:

"The court further finds that it was the intention of said Lizzie A. McCune in so causing said deeds to be deposited with J. E. Lang to separate herself from all dominion and control over the instruments, and to permanently part with the possession thereof, and that it was the intention of said Lizzie A. McCune to presently pass the remainder in fee simple, in trust, in and to the lands described in said deeds to the said city of Carthage, subject to the life estate reserved in her by operation of law.

"The court further finds that Lizzie A. McCune, hav-

ing already executed a testamentary disposition of said land described, by terms of her will and the two codicils thereto, did by terms of the deeds delivered to J. E. Lang, intend to convey a present fixed right of future enjoyment to the city of Carthage, for the uses and purposes set out and defined in said deeds and said will and codicils thereto; that it was the intention to effectuate her purposes by a present conveyance in lieu of the testamentary disposition provided for in said will and the codicils thereto.

"The court further finds that the references to said will and the codicils thereto were for the purposes of defining the terms of the trust imposed upon the conveyance to the city of Carthage, and the duties and the benefits arising under said trust, and not for the purpose of in any way fixing a testamentary disposition of said property.

"The court further finds that the delivery of said deeds to J. E. Lang, under the evidence was effectual to pass an estate in fee simple in trust, to the city of Carthage, subject, however, to the rights of said Lizzie A. McCune to enjoy the possession, use, rents and profits arising from said land for and during her natural life.

"The court further finds that on the 19th day of September, 1919, the said Lizzie A. McCune, being still entitled to the occupation, use, rents and profits arising from said lands, during her lifetime, made, executed to the plaintiff, Susan J. Tillman, a deed of quitclaim, whereby her life estate in and to said lands passed to the plaintiff, Susan J. Tillman.

"The court further finds that said Lizzie A. McCune is living and is the age of eighty years; that the plaintiff, Susan J. Tillman, is the owner of an estate in said lands for and during the natural life of said Lizzie A. McCune, and that the remainder in fee simple in and to all of said lands is vested in the city of Carthage, in trust for the purposes described in said deeds, will and codicils thereto.

"It is therefore ordered, adjudged and decreed by the court that the plaintiff, Susan J. Tillman, is the owner of an estate for the life of Lizzie A. McCune in and to the lands herein described to-wit: . . .

"That the defendant J. E. Lang has no right, title or interest in and to said lands whatever, and that the defendant Carthage Hospital Association has no right, title or interest in and to said lands whatever, and that the defendant the city of Carthage is seized of an estate in fee simple in remainder, in trust, in and to all of said lands, subject to the life estate so held by Susan J. Tillman for the life of said Lizzie A. McCune."

The main questions for determination are whether the deeds on their faces are testamentary in character and, if not testamentary on their faces, whether they are in fact testamentary for want of delivery. Each of the two deeds involved here is an ordinary warranty deed, with the exception of a single paragraph in each referring to the provisions of the will of Mrs. McCune, dated May 18, 1900, and codicil thereto of May 12, 1903. We have hereinbefore quoted those paragraphs. It is the contention of appellant that these paragaaphs make the deeds testamentary on their faces and that they, therefore, passed no title whatever to the city of Carthage.

The deeds do not by reference incorporate therein the entire will and codicil. The reference draws into the deeds only such parts of the will and codicil as define the purpose and intent of the grantor in the deeds (the testator in said will) with respect to vesting in the grantee the title in remainder in trust for hospital purposes. It is competent for a grantor to bring into a deed or other instrument by reference and as a part of such instrument itself, the whole or any designated part of another instrument. When such other instrument or designated part thereof is brought in by reference, the deed must be construed in connection therewith. [Allen v. De Groodt, 105 Mo. 442, l. c. 451; White v. Reading, 239 S. W. 90; Ray v. Walker, 240 S. W. 187.]

"Writings which are made a part of the contract by annexation or reference will be so construed; but where the reference to another writing is made for a particular and specified purpose, such other writing becomes a part of the contract for such specified purpose only. Reference is sufficient without actual annexation." [13 C. J. 530, sec. 488.]

The provisions of the will of May 18, 1900, and the codicil of May 12, 1903, referred to in each of the deeds, were as follows:

"Clause Second: I give, devise and bequeath all of the rest, residue and remainder of my estate, both real, personal and mixed, including all the rest, residue and remainder of the hereinbefore described real and personal estate after the death of my said sister, Mattie J. Duff, and after the death or re-marriage of my said daughter, Susan J. Tillman, to the City of Carthage, in the County of Jasper, in the State of Missouri, to be held by said city in trust, to be used for the erection and maintenance of a public hospital in said city, to be under the general direction and control of said city of Carthage, to be named and to be ever known as the McCune Hospital, and said city is fully authorized and empowered to sell and to make any disposition of the real estate herein devised to said city that said city may deem best. It is my desire and I direct that the said city of Carthage shall adopt a suitable plan whereby such hospital may be successfully operated and maintained and my wishes be carried out, and that it shall provide for and establish all necessary boards and committees for the establishment and maintenance of a permanent hospital and to make all needful and necessary regulations in connection therewith.

"Clause Third: I hereby authorize the said City of Carthage to use the property and funds devised and bequeathed to it by this instrument in connection with the funds bequeathed to it by Dr. Robert F. Brooks in the establishment of a public hospital and in that

event said hospital is to be named the McCune Hospital or the McCune-Brooks Hospital. And if a public hospital shall have been erected by said city of Carthage before my death, then and in that event, the property and funds devised and bequeathed to said city by this instrument may be by said city used in enlarging, furnishing and maintaining said hospital, provided, that said hospital be named the McCune Hospital or the McCune-Brooks Hospital." [Will dated May 18, 1900.]

"Third: I have in my last will and testament made provisions for the establishment and maintenance of a hospital in the city of Carthage, Jasper County, Missouri for the double purpose of

"1st. Mitigating the wants and pains of the unfortunate and afflicted.

"2nd. For the purpose of commemorating the name of our departed son, who had chosen and qualified himself for a life work in that profession which has for its mission the alleviation of the sick, suffering and afflicted, and to the end that his name, of which he was so proud, as well as that the name of his beloved father might be perpetuated in a lasting and suitable monument. I make the bequest for the establishment and maintenance of said hospital and I will and direct further that when said hospital is built that it bear the inscription: 'To the memory of Dr. T. E. McCune, son of E. T. and Lizzie A. McCune.'

"If, however, I should direct that said hospital or a wing of it should be built in my lifetime, then and in that event, I will through my trusted agents, arrange that a blank slab of marble or granite be suitably located in said building upon which the above inscription shall be carved after my death.

"The provisions of this codicil to my last will and testament are not intended to be in violation of or in conflict with the conditional provisions of my last will and testament with respect to my daughter as fully set forth in said will, it being my desire that if the condi-

tions therein set forth, should arise then and in that event, she is to receive the bequests as set forth and conditioned in my said last will and testament.'' [Codicil of May 12, 1903.]

The Jasper County lands were conveyed in two separate deeds, and the Barton County and Lawrence County lands in separate deeds respectively. The reference to the will and codicil incorporated the provisions thereof above set out in said deeds as fully as if they had been written into such deeds in the very words in which they are written into said will and codicil. There is nothing in the deeds to show that title did not immediately pass, subject to the conditions therein contained under the clauses referring to the will and codicil. Thus understood, the deeds conveyed to the city of Carthage a present, fixed right of future enjoyment for the uses and purposes set out in the will and codicil, which enjoyment was postponed until and subject to the life estate of Mrs. McCune, created and reserved in her by operation of law and later transferred by quitclaim deed to the appellant. This conclusion is supported by the reasoning in numerous Missouri cases, including the following: Dozier v. Toalson, 180 Mo. 546; O'Day v. Meadows, 194 Mo. 588; Sims v. Brown, 252 Mo. 58; Priest v. McFarland, 262 Mo. 229; Dawson v. Taylor, 214 S. W. 852; Hohenstreet v. Segelhorst, 227 S. W. 80; Wimpey v. Ledford, 177 S. W. 302.

But it is contended that the deeds were not delivered to the city and that they are therefore testamentary in fact and ineffectual to convey the title from the grantor to the grantee named therein. When the four deeds were executed they were placed in an envelope and the same was sealed and instructions endorsed on such envelope. We have already quoted these instructions. The envelope was then delivered to Mr. J. E. Lang, who was instructed by the endorsement to deliver it after the death of the grantor to the grantee named in each of the deeds, which deeds were intrusted to him for that purpose and

for safe keeping. Witnesses were permitted to testify
to statements made by Mrs. McCune at the time which
tended to show the irrevocable character of her act in
delivering the deeds to Lang. Complaint of the admission
of such evidence will be noticed later. Such testimony
tended to show that Mrs. McCune did not want to put
the deeds on record or have it become known that she
had deeded the lands to the city of Carthage until after
her death, and yet that she wanted the provision for the
hospital safeguarded in such a way as to assure that
nothing—not even her own act—would thereafter prevent
her desires being carried out. The testimony of Mr.
McReynolds and Mr. Lang, beyond all doubt, established
the fact that Mrs. McCune parted with all control over
the deeds. Indeed, such testimony was unnecessary to
show the nature and character of the delivery. The
language of the endorsement itself was sufficient for that
purpose. [Standiford v. Standiford, 97 Mo. 231; Wil-
liams v. Latham, 113 Mo. 165; Cook v. Newby, 213 Mo.
471; Schooler v. Schooler, 258 Mo. 83; Marshall v. Hartz-
felt, 98 Mo. App. 178; Meredith v. Meredith, 229 S. W.
179; Crites v. Crites, 225 S. W. 990.]

The deeds are absolute conveyances, subject, on
their faces, only to the charitable trust created therein.
There is nothing in the endorsement on the envelope
enclosing the deeds which in any wise limits the character
of the deeds as absolute conveyances as expressed on
their faces.

The very fact that Mrs. McCune had previously
made the identical provision in her will and codicil rela-
tive to the disposition of the lands which was made as
a trust provision in the deeds argues most forcefully
against the motion that she afterwards made another
*testamentary* provision and is persuasive, if not prac-
tically conclusive, evidence that she meant, by the execu-
tion of the deeds and their delivery to Mr. Lang, to do
the very thing Mr. McReynolds testified she told him she
wanted to do, to-wit, that she desired to keep the execu-

tion and the delivery of the deeds a secret, for fear it would make trouble for her, which she desired to avoid, and in effect that she feared the courts might set the will aside and defeat her plan to build a memorial to her son, as provided in her will and codicil.

In this connection it is significant to note, as appears from the record before us, that at the date of the trial Mrs. McCune was still living and, in fact, was at the time in her usual health and within a half mile of the court house and, for aught which appears in the record, was able to appear and testify, although unable to walk because of her great age and physical infirmities. In any event, the appellant could have had the benefit of her testimony by deposition if she could not have been brought to the court room. Yet she did not avail herself of Mrs. McCune's testimony. The court had the right to assume such testimony would not have been helpful to the contention of the appellant. [Dunkeson v. Williams, 242 S. W. l. c. 658, citing Bryant v. Lazarus, 235 Mo. 606-612, and Kame v. Railroad, 254 Mo. 175-194.]

The cases relied upon by appellant can be distinguished. In Murphy v. Gabbert, 166 Mo. 596, the deed contained the provision that grantor "relinquishes her entire right at her death; then this deed is to immediately come into effect, but not till then." The deed showed on its face that it did not take effect *in praesenti*, but only upon the death of the grantor.

In Aldridge v. Aldridge, 202 Mo. 565, the deed provided that if the grantor outlived the life tenant, the land should revert to the grantor, instead of going to the remainderman.

In Griffin v. McIntosh, 176 Mo. 392, the deed on its face declared it was to be held by the grantor until his death and then to be delivered to the grantee. As a matter of fact, it was held by the grantor until two weeks before his death and then placed in grantee's hands "to take care of."

In Givens v. Ott, 222 Mo. 395, a deed providing that

it should not take effect until the death of the grantors was held insufficient.

In Terry v. Glover, 235 Mo. 544, the deed recited that it was not to go into effect until grantor's death. It was also held that the deed was not delivered because the grantor did not part with its possession.

In Goodale v. Evans, 263 Mo. 219, the *habendum* clause recited that the grantee was "to have and to hold the premises . . . from and after the death" of the grantor. This clause showed no present interest was conveyed and made the deed testamentary in character.

These cases cast no doubt upon the correctness of the trial court's conclusion under the evidence in this case that the deeds were absolute conveyances on their faces, subject to the specified conditions and that the delivery was complete when they were handed to Lang with irrevocable directions to him to keep them safely and upon grantor's death to deliver them to the grantee named therein, the city of Carthage.

There is nothing in the previous relations existing between Mrs. McCune and Mr. Lang which is suffcient to change the absolute character of the delivery. While he had been her banker and confidential agent, he was a stranger to the transaction involved in the delivery to him of the deeds. [Meredith v. Meredith, supra.] He was not acting as Mrs. McCune's agent in receiving and holding the deeds.

It is insisted that the court erred in permitting Mr. McReynolds and Mr. Lang to testify concerning conversations had with Mrs. McCune at the time that the 1903 codicil was drawn and at the time and immediately before the four deeds were delivered to Mr. Lang. The trial court expressly limited all the oral testimony offered by defendants to the sole purpose of aiding in determining whether or not Lizzie A. McCune intended to and did deliver the four deeds to Lang to hold said deeds for the city of Carthage with the intention to irrevocably divest herself of all control over said deeds. The court there-

fore did not consider any oral testimony concerning conversations with Mrs. McCune relative to the 1903 codicil or other oral testimony in the case, except as it related to the retention of control over the deeds after their delivery to Lang.

The question of Mr. McReynolds's relation to Mrs. McCune as her attorney in the transaction was an issue of fact upon which the trial court heard evidence. The trial judge evidently found McReynolds was not acting as her attorney and considered his testimony. His finding on this question, supported as it is by substantial evidence, is conclusive.

The trial court reached a conclusion unassailable under the evidence, in the light of our previous decisions, and the judgment should be and it is affirmed. *Graves, Higbee* and *James T. Blair, JJ.*, concur; *Woodson, C. J.*, and *Walker* and *Elder, JJ.*, dissent.

WALKER, J. (dissenting).—The solution of two questions is necessary to the proper determination of this case. One of these is the delivery of the deeds, and the other is their character. It has been tersely said by a great jurist that "delivery is the life of a deed." Without this essential "it is a mere dead scroll and hath no life in it." [Chambers v. Chambers, 227 Mo. l. c. 282.]

Whether a deed has been delivered or not is a mixed question of law and fact. [McKinney v. Hawkins, 215 S. W. (Mo.) 250.] A cogent factor is the intention of the parties. While a presumption of delivery arises from the execution of a deed, it may be rebutted by facts showing that such was not the intention of the grantor. There are cases in which it is held that if the grantor, when executing it, intends it as a delivery and this is known and understood by the grantee, and the parties treat the estate as having thereby actually passed, it will effect a valid transfer of the property, although the possession be left in the grantor. This rule, however, is applied under a state of facts, as disclosed in the cases cited in

support of same, different from those at bar.  [Harvey v. Long, 260 Mo. 1. c. 386;  Tobin v. Bass, 85 Mo. 1. c. 658;  Cecil v. Beaver, 28 Iowa, 241;  Gould v. Day, 94 U. S. 405.]  Furthermore, in the discussion of this question it is held here and in other jurisdictions that delivery may be shown by acts without words, or by words without acts.  [Miles v. Robertson, 258 Mo. 717;  Townsend v. Schaden, 275 Mo. 1. c. 242;  8 R. C. L., par. 50, p. 980;  Ward v. Small, 90 Ky. 198;  Shoptaw v. Ridgway, 60 S. W. (Ky.) 723;  Martin v. Bates, 50 S. W. (Ky.) 38;  Hughes v. Easten, 4 J. J. Marsh, 573;  Jackson v. Phipps, 12 Johns. 421.]  It will be seen from these cases that the question of delivery must be determined from the facts in the particular case, a general rule applicable alike to all cases being impossible.

There are certain essentials, however, to such a delivery as will effectuate a transfer of title, which are general in their terms and alike applicable to all cases, One of these essentials is the presence of unequivocal facts showing that the grantor in executing the deed parted with his dominion over the property with the intent that the title thereto should pass to the grantee. [Wren v. Sturgeon, 184 S. W. (Mo.) 1036, and cases cited; McKinney v. Hawkins, 215 S. W. (Mo.) 250; Ray v. Walker, 240 S. W. (Mo.) 1. c. 196.]

An effective delivery may be made by placing the deed in the hands of a third person to be delivered upon the grantor's death.  This rule is applicable, however, only when the instructions to the depositary as to the delivery are unconditional in their nature, leaving no room for controversy as to the grantor's intentions. [Peterman v. Crowley, 226 S. W. (Mo.) 944; Crites v. Crites, 225 S. W. (Mo.) 990; Whitely v. Babcock, 202 S. W. (Mo.) 1091.]

A statement of the relevant facts may, without more, enable it to be determined whether there was such a delivery of the deeds as to meet the requirements of the general rules above referred to.  The deeds were de-

posited by the grantor with the president of a bank in Carthage named J. E. Lang. His business relations with the grantor, confidential in character, were varied in their extent, and may not improperly be classified as those of an agent coupled with that of an adviser in the conduct of her business. We quote in narrative form, omitting the interrogatories, his testimony defining his relations and stating the circumstances under which he acquired the possession of the deeds. His testimony, as nearly in his own words as possible, is as follows:

"Mrs. McCune came in the first place and stated that she came to me as a friend of her husband's and a Mason. Then she stated that she wanted to make a donation to the hospital, the Brooks Hospital, because her son and Dr. Brooks were great friends. I told her that Mr. McReynolds was taking a great interest in the hospital, and he was the man for her to see in regard to it. So we called in Mr. McReynolds and this matter was taken up with him. Mrs. McCune talked to me at different times as to what would occur after she died. She was fearful of her will being broken and she wanted to know if there was not some way it could be fixed, and I told her she could make a deed. She objected to making a deed and recording because that would make it public. She was very secretive in all her transactions. She didn't want the left hand to know what the right hand was doing. I told her I would talk to Mr. McReynolds and see if it could be done. Mr. McReynolds told me at that time that the deeds could be made and delivered. I told her that Mr. McReynolds had said that she could make a deed and deliver it and it could be held until she died. I then arranged a meeting between her and Mr. McReynolds. After that I knew nothing more until this package was delivered to me to hold. I think it was Mr. McReynolds who delivered it. It was sealed at that time. Since that time it has been at the bank among my papers. The will and both the codicils were in the bank in my custody, and had been ever since they were drawn, except

that Mr. Gibbs had them at one time. I had control of the
will and codicils several years. I can't say exactly how
long. Mrs. McCune kept a box in my bank. I had access
to the box. I have transacted a great deal of Mrs. Mc-
Cune's business for several years. Not all of it. I wrote
small checks on her account, settling up her little bills.
Any large checks, she wrote herself. I looked after her
lands and collected her interest or rents and leased her
farms, and anything she wanted me to do. I was her
general agent in looking after and transacting all of her
business. We were good friends. I paid her taxes and
looked after her insurance. I have the originals of the
notices Mrs. McCune gave me in October, 1919, relative
to her papers, but I haven't them here. They are in my
possession. The first one is dated October 18, 1919; the
second, October 27, 1919. After these notices [which
requested Lang to turn over the papers to her], she came
to the bank and stopped out in front in a closed car, and
I shook hands with her and read one of these notices to
her and wanted to know if that was her request and she
said it was. And afterwards I turned over the papers to
her, except these four deeds. I took the position that
other parties were interested in them and I could not turn
them over without their consent. My position was that I
was willing to turn the deeds over after the controversy
was settled. I think I told you at the time [addressing
counsel] when it was settled I was willing to turn them
over. I looked after the insurance of the houses on the
farms, described in the deeds, and kept this up after the
execution of the deeds as before.''

We have shown that intention is the mainspring de-
terminative of the character of the grantor's action in
depositing the deeds with her agent, Mr. Lang. That in-
tention, when correctly determined, must comprise the
entire contemplated operations of the act—those for the
sake of which as well as those in spite of which the act
was done. Or more briefly, if correctly determined from
the proof, it must comprehend the entire purpose and

design of the act. That it was the intention of the grantor to bequeath the residue of her real property to the city of Carthage for the erection and maintenance of a hospital subsequent to the satisfaction of other bequests named, there need be no controversy; but the nature of the transfer of the lands, described in the deeds, is not to be determined from this fact. The salient sources from which light may properly be derived in the solution of this question are in the relations sustained by J. E. Lang to the grantor; especially in the dominion exercised under her direction by him over the land described in the deeds after their execution and deposit with him, evidenced by his management and care of the property, including the making of improvements, the rental of the land and the collection and accounting to her of the rents, his payment for her of the taxes and the insurance. In short, his recognition of the fact that despite the deeds, her dominion was complete and that it was intended by her to continue during her life. Although but incidental, Mr. Lang's testimony (despite his conduct contradictory of same in refusing to return the deeds to her) furnishes further proof of the manner in which he then construed her act in that her dominion over the property continued despite the deeds. This dominion is out of harmony with a purpose to pass a title *in praesenti*. Complete control, in the absence of anything to the contrary, is an excellent indicia of ownership. Thus it must have been regarded by her when her entire conduct is taken into consideration. Furthermore, other material facts furnished by Mr. Lang's testimony give force to the correctness of this conclusion. Being her general and confidential agent, in him was reposed the custody and care of all of her papers. There is no evidence that these deeds were not received, held and kept by him in the same manner and for the same purpose as her other papers. Some oral evidence, much of which was wholly inadmissibel, was introduced in an attempt to render complete the grantor's transfer of the property. Whatever probative force may

have been given to this testimony by the trial court to sustain the question of the delivery of these deeds, it is dissipated by a review of Mr. Lang's entire testimony and her conduct in relation to the matter. If it had been her purpose to pass a present title to the lands described in the deeds, her desire to keep their transfer secret not only as to the execution of the deeds themselves, but as to their recording, can find no resting place in the reasoning mind. However, it being her purpose to ultimately make these lands a part of her charitable bequest and believing as she had probably been advised, that the operation of the deeds *in futuro* would effect that end, she would not desire that the transaction be given publicity, thus avoiding any question as to her domination and enjoyment of the fruits of the lands during her life. That she entertained this view of the transaction and did not contemplate a present delivery is further attested by her demanding the return to her of the deeds—a course consonant only with a future but not a present purpose of transfer. It will not suffice to say that this conduct may have been animated by caprice and a desire to revoke the bequest. There is no evidence to support this conclusion. On the contrary it is clearly shown that so far as her intention at the time was concerned it was to convey the lands for the purpose designated and that Mr. Lang, her agent and representative, was to retain them for safe keeping as he did her other papers until her demise. That she subsequently changed her mind and determined to make a different disposition of the lands is in harmony with the conclusion that a present transfer was not contemplated by her at the time of the execution and deposit of the deeds. Possessed of more than ordinary intelligence, her experience in the management of her property under the advice of her agent, Mr. Lang, authorizes an inference stronger than a presumption that she knew full well the effect of the execution of a deed to real property and the delivery of same to the grantee, and that when so delivered she would be powerless to recall the deeds and could not have demanded their return.

In passing, it may be pertinently remarked that the lay mind of the adult of average intelligence, although not panoplied with the experience possessed by Mrs. McCune, is familiar with the fact that the making of a deed and its delivery to the person to whom it is made will effect a present complete transfer of title in the absence of any limitation therein.

Mr. Lang's testimony as to the manner in which he held the deeds is corroborated by the endorsement made on the package containing them, to the effect that they were delivered to him for the purpose of safely keeping them and upon her demise they were to be delivered to the grantee named therein. In the face of this endorsement, not to be otherwise construed than as an express direction to Mr. Lang so long as he held the deeds, there can exist in the reasoning mind no ground for controversy nor for variant conclusions. The purpose of the deposit was safekeeping; the time of the delivery was the grantor's demise.

Precedents are not lacking to support not only the reasoning but the conclusion reached in this behalf.

We held in Coles v. Belford, 232 S. W. (Mo.) 728, that where a grantor had directed one grantee to put the deed away and keep it and whenever anything happened or when the grantor died to have it recorded, indicated that it was the grantor's intention that the deed was not to become operative until her death. Especially was this held to be true when other evidence disclosed that thereafter she retained the management and control of the property and exercised other acts in regard thereto indicative of ownership. Under such a state of facts it was held that there was no delivery at the time within the contemplation of the law.

In Huey v. Huey, 65 Mo. 689, it was held that the mere lodgment of a deed in a place to which the grantee had access and from which he could without hindrance transfer it to his own possession, which the intent on the part of the grantor that the grantee might, after his

death, take it and have it recorded and then become the owner of the land conveyed, did not constitute a delivery of the deed. A like state of facts was held to show non-delivery in Scott v. Scott, 95 Mo. 300.

In Terry v. Glover, 235 Mo. 544, it is held that it is essential to a valid delivery that the grantor part with the possession of the deed without reservation and with the intention evidenced by her acts in regard to the property that it was to take effect at the time and thus operate as a transfer of the title.

In Whitely v. Babcock, 202 S. W. (Mo.) 1091, it is held that deeds delivered to a trustee with a collateral agreement that they were not to deliver them to the beneficiaries or be recorded until after the grantor's death were void in that it was not intended that they were to pass title during the grantor's life.

The case at bar may readily be distinguished from Crites v. Crites, 225 S. W. (Mo.) 990, and cases there cited, which hold that a deed placed in the hands of a third person with unconditional instructions to deliver the same to the grantee upon the grantor's death, in that at bar there were no unconditional instructions to deliver until the grantor's death, and every act of the grantor was indicative of a purpose of continued ownership and dominion until that time arrived.

Much that we have said in regard to the essentials to a delivery of a deed is applicable in determining its character. Intention, as in a delivery, is of prime importance. This may be arrived at not only from the language employed in the instrument, but from all of the attending circumstances. Deducing a conclusion from diverse authorities, where, as here, it appears that it was the intention of the grantor from her continued possession and enjoyment of the property after the conveyance that the title was to remain in her until her death and then pass to the grantee, the instrument will be held to be testamentary and hence incapable of consummation as a deed. This conclusion is founded upon the distinc-

tive difference between deeds and wills, in that an instrument to have the effect of a deed must convey a present interest, while to possess the characteristics of a will it can become effective only upon the death of the maker. Stated in different words, but to the same effect, is the ruling of this court in O'Day v. Meadows, 194 Mo. 588, that a mark of distinction between wills and deeds is that in the former the grantor may at any time prior to his death revoke the provisions, while in the latter a vested estate is created which is irrevocable. To a like effect, we held in Givens v. Ott, 222 Mo. 395, that an instrument to be good as a deed must convey a present interest, and where it is to take effect and become operative alone on the grantor's death it is testamentary.

So far, however, as the determination of the matter at issue is concerned, the question of the character of the instruments, as disclosed by their terms, is immaterial. They were never delivered and hence they passed no title, present or prospective. This being true, it is not necessary to discuss the question as to whether the will, the codicils and the deeds should be considered together and construed as one instrument in determining the character of the deeds.

I was of the opinion when this case was orally argued that there had never been a delivery of these deeds, and a subsequent review of the record has tended to strengthen that conclusion. Entertaining this view, this case should be reversed with directions to the trial court to enter a judgment in favor of the appellant.