**WILSON MANUFACTURING COMPANY, Plaintiff/Appellant/Cross–Respondent,**

**v.**

**Edward A. FUSCO, Defendant/Respondent/Cross–Appellant.**

**Nos. ED 89661, ED 89912.**

Missouri Court of Appeals, Eastern District, Division One.

May 20, 2008.

Application for Transfer Denied Aug. 26, 2008.

Michael D. Regan, Timm W. Schowalter, Lashley & Baer, P.C., St. Louis, MO, for appellant.

Weldon N. Johnson, Jason W. Kinser, St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

Employer appeals from a judgment in former employee's favor on employer's claims for injunctive relief for breach of a covenant not to compete contained in an employment agreement and for violation of the Missouri Uniform Trade Secrets Act, sections 417.450 *et seq.* RSMo 2000 (MUTSA). The trial court concluded that the employment agreement incorporated a document entitled "Schedule A" for all purposes, that the one-year duration of Schedule A applied to the employment agreement, and that the employment agreement was no longer in effect when

employee resigned twelve years after executing the employment agreement. We reverse and remand because the trial court's judgment was based on its erroneous conclusion that Schedule A was incorporated into the employment agreement by reference for all purposes and therefore the employment agreement had expired at the same time that Schedule A expired.

Employee has filed a cross-appeal that challenges the trial court's refusal to modify the injunction bond. We dismiss the cross-appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Wilson Manufacturing Company (employer), is a manufacturer and distributor of high precision cutting tools and engraved rotary dies for the labeling and printing industry. In April 1994, employer hired defendant, Edward A. Fusco (employee), as a sales representative to work out of employer's St. Louis office. On May 12, 1994, employer and employee executed a document entitled "Agreement" (hereinafter, the Agreement). They also signed as "approved" a document entitled "Schedule A" (hereinafter, Schedule A).

The Agreement contained a series of recitals that covered employer's business, contacts, information, processes, and trade secrets and set out employee's desire to use these contacts and information in becoming an agent of employer. In consideration of these recitals, the parties set out their agreements in a series of clauses entitled "Employment and Duties", "Performance", "Trade Secrets", "Business Disclosures", "Agreement Not To Compete", "Governing Law", "Notice", "Successors and Assigns", "Representations and Warranties", "Entirety of Agreement", and "Gender."

The sole reference in the Agreement to a document identified as "A" was contained in the "Employment and Duties" clause, as follows: "[Employer] agrees to employ [Employee] under the terms and conditions set forth herein and in Exhibit 'A', which is attached hereto and incorporated herein for reference, for such salary and other compensation as set forth therein."

The trial court found, and the parties agree, that the reference to "Exhibit 'A'" was to Schedule A. Schedule A had an effective date of April 18, 1994 and an expiration date of April 18, 1995. Schedule A set out the amount of employee's annual salary, how it was to be paid, how and when commissions were to be paid, and the commission rates. It also covered paid vacation and holidays and other benefits, including payment of health and life insurance premiums and the use of employer's credit cards.

Employee remained a sales representative for employer from April 1994 until his resignation in late May or early June 2006. After Schedule A terminated, employee's compensation and benefits were redetermined each year by oral agreement.

On August 21, 2006, employer filed a verified petition to obtain an injunction and recover damages and other relief from employee. In Count I, employer alleged that employee worked for employer's direct competitor and that he was actively soliciting employer's customers in breach of the non-competition and non-solicitation covenants of the Agreement. In Count II, employer alleged that employee misappropriated employer's trade secrets in violation of MUTSA. In Count III, employer alleged that employee interfered with employer's customers and its expectation of continued business with those customers.[1]

---

1. The petition also contained two other counts, which were disposed of prior to the

After a hearing, the Honorable Keith Sutherland entered a Temporary Restraining Order. During the hearing on employee's motion to set aside the restraining order, Judge Sutherland explained that he concluded that the Agreement and Schedule A were two separate agreements with two separate purposes, and that although Schedule A expired on April 18, 1995, the Agreement had not expired. He denied the motion and subsequently entered a preliminary injunction on counts I and II, enjoining employee from engaging in any business that competes with employer and misappropriating, using or disclosing employer's trade secrets. He found insufficient evidence to warrant an injunction on the remaining counts.

Thereafter, employee requested a change of judge. Ultimately, the case was assigned to the Honorable Dan Dildine, who conducted the hearing on the permanent injunction. On April 5, 2007, Judge Dildine entered a judgment denying relief on Counts I, II, and III and dissolving the temporary restraining order and preliminary injunction. He concluded that all of the claims were premised upon the Agreement; that Schedule A, which terminated on April 18, 1995, was incorporated into the Agreement; and therefore, the Agreement expired along with Schedule A on April 18, 1995. He further concluded that when employee resigned in 2006, he was under no restrictions. Employer appeals from the denial of relief on Counts I and II of this judgment, and employee cross-appeals.

### DISCUSSION

### EMPLOYER'S APPEAL

I. *Count I–Breach of Contract*

In its first point, employer maintains that the trial court erred in denying relief

hearing on the permanent injunction.

on Count I, the breach of contract claim. It argues that the Agreement did not expire when Schedule A expired on April 18, 1995, because the plain language of the Agreement and of Schedule A showed that the parties intended them to be two separate agreements, one of indefinite duration and one with a one-year duration. We agree.

The interpretation of a contract is a question of law. *Wilshire Const. Co. v. Union Elec. Co.*, 463 S.W.2d 903, 905 (Mo.1971). "The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Dunn Indus. Group v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). To determine the parties' intent, we read the agreement as a whole and give each term its plain, ordinary, and usual meaning. *Id.* We construe each term so as to avoid rendering other terms meaningless. *Id.* "A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." *Id.* If the language is not ambiguous, we determine the parties' intent from the contract alone. *Id.* at 428–29.

The Agreement covered ongoing conditions and obligations of the employment relationship. It specifically contained restrictive covenants to protect against unfair competition and to protect employer's customer contacts and trade secrets. It had no durational term, thus creating an at-will employment. *Schmalz v. Hardy Salt Co.*, 739 S.W.2d 765, 767 (Mo.App. 1987). It did not set out the amount of compensation or describe benefits or how they were to be calculated, but stated that Schedule A was incorporated "for refer-

ence, for such salary and other compensation as set forth therein." Schedule A was a separate, signed agreement that covered employee's salary, compensation, and benefits that were subject to change, and had a term of one year.

▪ The issue is whether the reference to Schedule A in the Agreement also incorporated the one-year durational limitation contained in Schedule A into the Agreement and caused the Agreement to terminate after one year.[2] One instrument may incorporate the whole or any designated part of another instrument. *Tillman v. City of Carthage*, 297 Mo. 74, 247 S.W. 992, 995 (1922). "[M]atters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba." *Dunn Indus. Group*, 112 S.W.3d at 435 n. 5. When another instrument or designated part thereof is incorporated by reference, the original instrument and the incorporated matter must be construed together. *Tillman*, 247 S.W. at 995. But, if " 'the reference to another writing is made for a particular and specified purpose, such other writing becomes a part of the contract for such specified purpose only.' " *Id.* (quoting 13 C.J. 530 section 488). "A reference by the contracting parties to an extraneous contract for a particular purpose makes it a part of their agreement only for the purpose specified." *Guerini Stone Co. v. P.J. Carlin Constr. Co.*, 240 U.S. 264, 277, 36 S.Ct. 300, 60 L.Ed. 636 (1916). *See also* 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS section 30:25 (4th ed.1999); 17A C.J.S. *Contracts* section 316 (1999); 17A Am.Jur.2d *Contracts* section 400 (1991).

The plain language of the "Employment and Duties" clause of the Agreement indicates that Schedule A was "attached hereto and incorporated herein for reference, for such salary and other compensation as set forth therein." This language clearly limits the incorporation of Schedule A for the purpose of clarifying salary and other compensation. This is a partial incorporation of Schedule A that does not reflect any intent to incorporate the durational term of Schedule A.

▪ In cases in which courts have found entire documents rather than specific portions of documents to be incorporated, the courts have found significant that the entire incorporated document was necessary to explain and clarify the prime, or host, document. *See Lusk v. Lyon Metal Products*, 247 S.W.2d 617, 622 (Mo.1952); *Intertel v. Sedgwick Claims Management*, 204 S.W.3d 183, 196–97 (Mo.App.2006). This is not the case here. Schedule A does not explain, define, or clarify any terms or provisions in the Agreement except salary and compensation. Specifically, the one-year duration of Schedule A was not necessary to explain, clarify, or complete the Agreement. Covenants not to compete are enforceable even if they are contained in employment contracts that do not provide a definite period of employment. *Panther v. Mr. Good–Rents, Inc.*, 817 S.W.2d 1, 5 (Mo.App.1991); *Deck and Decker Per. Consultants v. Pigg*, 555 S.W.2d 705, 707–08 (Mo.App.1977).

Employee responds that the durational provisions in Schedule A control the Agreement because the use of the words

---

**2.** The parties have not cited any case in which the durational terms of one agreement were incorporated by reference into another agreement. In *Ibarra v. Missouri Poster & Sign Co.*, 838 S.W.2d 35 (Mo.App.1992), the appellant employee argued that a one-year term in a written salary agreement caused a separate non-compete agreement to terminate after one year; however, the court of appeals did not reach this issue because it was not preserved. *Id.* at 40–41.

"this Agreement" in Schedule A can only refer to the Agreement and indicates that the two documents constituted one agreement. We disagree.

The words "this Agreement" appear in the first two sentences of Schedule A:

1. The effective date of this Agreement is the 18th day of April 1994.

2. The expiration date of this Agreement is the 18th day of April 1995.

As used in these sentences, "this" "is a demonstrative word referring particularly to that which is present." *Hatchett v. Cosmopolitan Life, Health & Acc. Ins. Co.,* 241 Mo.App. 1098, 247 S.W.2d 348, 351 (1952). The document present was Schedule A, which also was an agreement. When the term "this agreement" is used in an agreement, it is a reference to itself, and not to other agreements between the parties. *See Rosenblum v. Travelbyus.com Ltd.,* 299 F.3d 657, 664 (7th Cir. 2002); *see also State v. Public Service Commission,* 348 Mo. 780, 155 S.W.2d 149, 152 (1941) (the words "this Report and Order" used in an amended report and order referred to the amended report and order and not to the prior report and order). As used in Schedule A, the term "this Agreement" refers to Schedule A, and not to the other document executed by the parties and titled "Agreement."

This construction gives full force and effect to both the Agreement and Schedule A. The first clause of Schedule A established when Schedule A became effective. A written contract becomes binding when it is finally executed or delivered, unless a different intent appears. *Cosby v. Harding,* 553 S.W.2d 535, 536 (Mo.App.1977) (quoting 17A C.J.S. *Contracts* section 359). By stating that Schedule A was to become effective on April 18, 1994, the parties indicated their intent to have Schedule A become binding on that date rather than on the date they signed Schedule A. On the other hand, the Agreement begins with the sentence, *"THIS* AGREEMENT, entered into this 12th day of May 1994." (emphasis added) The Agreement concludes with a statement that it was executed on the same date. It contains no language indicating that the parties intended it to become effective on any date other then the date of execution. Thus, the Agreement became binding on May 12, 1994, and Schedule A became binding on April 18, 1994. In construing whether the parties intended to incorporate into the Agreement the one year duration of Schedule A, we are bound to give a construction that attributes a reasonable meaning to all of the provisions, rather than one that leaves some provisions without function or sense. *Dunn Indus. Group,* 112 S.W.3d at 428. The language in the Agreement establishing that it became binding on May 12, 1994 would be meaningless if the term "this Agreement," as used in the first sentence of Schedule A reciting that its "effective" date was April 18, 1994, referred to the Agreement and not to Schedule A. The only reasonable construction is that in the Agreement the parties used the term "THIS AGREEMENT" to refer to the Agreement, and in Schedule A the parties used "this Agreement" to refer to Schedule A, and the parties did not intend in either document to refer to the other document or both documents in combination.

In addition, the incorporation of the one-year duration of Schedule A into the Agreement would leave most of the remaining clauses of the Agreement without function or sense. The Agreement clearly contemplated continuing employment for an indefinite period and set out terms applicable for the entire time of the employment relationship, without any reference to a one-year limitation. Interpreting the reference to Schedule A to include an in-

corporation of Schedule A's termination date would deprive most of the provisions of the Agreement of full force and effect. It would mean that employee would not have been bound by the requirements of the Performance clause or the Trade Secrets clause after the first year. The Business Disclosures clause, governing the parties' action "upon termination of this Agreement," would have required employee to turn in all records, charts, company files, client lists, etc., at the end of one year, and not have them available for his continued employment. The Agreement Not To Compete clause, which covered a three-year period after the date of employee's termination of employment, also would not have become operative on employee's termination unless employee terminated his employment on or before the first year of employment. The only construction of the incorporation clause that attributes a reasonable meaning to all of the terms of the Agreement is that it did not incorporate the durational limitation of Schedule A.

The "Employment and Duties" clause of the Agreement used limiting language to incorporate Schedule A for the limited and specific purpose of setting out salary and compensation, and the plain language of both documents indicates that the reference to Schedule A was for the specific purpose of incorporating into the Agreement the compensation and benefit provisions in Schedule A and for no other purpose. Accordingly, Schedule A's expiration date did not apply to the Agreement, and the Agreement was still in effect at the time employee terminated his employment. Employee was bound by the provisions of the Agreement at that time.

The trial court erred in entering judgment for employee on Count I. Point one is granted.[3]

## II. *Count II—MUTSA*

 For its fifth point, employer maintains that the trial court erred in entering judgment against it on Count II, its claim based on misappropriation of trade secrets in violation of MUTSA. Employer claims that the trial court erred when it concluded that all of employer's claims were premised on the Agreement that was executed on May 12, 1994. We agree.

 In its judgment, the trial court indicated that the MUTSA claim was based on the Agreement. It found that employer was not entitled to relief because the Agreement had expired on April 18, 1995. Since we have held that the Agreement did not terminate when Schedule A terminated, this rationale no longer supports the judgment against employer on Count II. Moreover, the underlying premise set out in the judgment, that the MUTSA claim was based on the Agreement, is erroneous. Employer did not so allege, and MUTSA does not require the existence of an agreement for a misappropriation of trade secrets action to lie. A party can establish a misappropriation claim under MUTSA without showing the existence of an agreement. *See, e.g. Conseco Fin. Serv. v. North American Mort.,* 381 F.3d 811, 819–20 (8th Cir.2004) (applying Missouri law).[4] *See also* William M. Corrigan, Jr. and Michael B. Kass, *Non–Compete Agreements and Unfair Competition—An Updated Overview,* 62 Mo. Bar J. 81, 82 (2006).

---

3. Because of our disposition of point one, points two, three, and four, which raise alternative grounds for reversal of Count I, are moot.

4. An employer also has a common law right in its trade secrets that may be protected by injunctive relief, whether or not an agreement exists. *A.B. Chance Co. v. Schmidt,* 719 S.W.2d 854, 859 (Mo.App.1986).

The trial court erred in entering judgment against employer on Count II. Point five is granted.

### EMPLOYEE'S CROSS–APPEAL

For his sole point on cross-appeal, employee contends that the "trial court erred in refusing to modify the injunction bond because the court's ruling was against the substantial weight of the evidence in that [employee] produced substantial evidence that he incurred damages in an amount in excess of the bond prior to the time [employer] filed its notice of appeal." In the argument under this point, employee lists several occasions, beginning in August 2006 and continuing until May 14, 2007, when he allegedly requested an increase in the bond and his request was denied.[5] Employee claims he was entitled to an increase in the bond under Rule 92.03.

We dismiss the cross-appeal as untimely. In his brief on cross appeal, employee did not specifically identify any particular judgment he was appealing from. Further, he did not include a copy of a judgment in his appendix, which Rule 84.04(h)(1) would require him to do if he was appealing from any judgment other than the April 5, 2007 judgment contained in employer's appendix. Employer filed a notice of appeal from that judgment on May 5, 2007. Rule 81.05 requires a cross-appellant to file a notice of appeal within 10 days of the appellant's notice of appeal. Employee did not file his notice of appeal until June 22, 2007, which was more than 10 days after the employer's notice of appeal was filed, and he did not file a motion to file a late notice of appeal.

Employer raised the untimeliness of the cross-appeal in its cross-respondent's brief. Employee responded in his reply brief that he was appealing from a judgment entered on May 16, 2007. This judgment was not included in the appendix to that brief. Consistent with Rule 84.04(h)(1), the opening brief can only be construed as a brief on an appeal from the April 5, 2007 judgment. In these circumstances, employee is foreclosed from claiming in a reply brief that he is appealing from a different judgment.[6]

### Conclusion

The judgment of the trial court on Counts I and II is reversed and the case is remanded for further proceedings consistent with this opinion. The cross-appeal is dismissed.

ROBERT G. DOWD, JR., J. and KENNETH M. ROMINES, J., concur.

---

**5.** Not all of these recitals correctly reflect what is contained in the record, and not all of these recitals are supported by references to the record.

**6.** Even if we would consider the cross-appeal to be a timely-filed appeal from the May 16, 2007 judgment, it would still be dismissed. The May 16, 2007 judgment was entered in an independent action to assess damages on the bond. *J and P Trust v. Continental Plants Corp.*, 541 S.W.2d 22, 26–27 (Mo.App.1976). Neither the May 16, 2007 judgment, nor the transcript of the hearing, indicates that the trial court considered or ruled on any request to increase the bond in that proceeding. We further note that because the trial court had denied a permanent injunction and did not "suspend, modify, restore, or grant an injunction" during the pendency of the appeal, it would have had no power under Rule 92.03 to order an increase in the bond, even if a request had been made. The error raised on cross-appeal did not involve a ruling or action taken by the court in the action on which the May 16, 2007 judgment was based. As a result, any cross-appeal from the May 16, 2007 judgment would have been subject to dismissal on this ground. *J and P Trust*, 541 S.W.2d at 26–27.