

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

STEPHAN JOHANNESMEYER,     )
          )
     Respondent,     )
          )
v.          )     WD87410
          )
NET ZERO, LLC.,     )     Filed: June 17, 2025
          )
     Appellant.     )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
## THE HONORABLE JON E. BEETEM, JUDGE

## BEFORE DIVISION ONE: KAREN KING MITCHELL, PRESIDING JUDGE, LISA WHITE HARDWICK, JUDGE AND MARK D. PFEIFFER, JUDGE

Net Zero, LLC ("Net Zero") appeals the judgment granting Stephan Johannesmeyer's claim for breach of a promissory note and ordering it to pay him $190,000 plus post-judgment interest. Net Zero contends Johannesmeyer lacked standing to sue for breach of the note; there was no evidence of consideration for the note; and Net Zero did not waive the defense of lack of consideration. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Net Zero is a business engaged in the construction of energy efficient homes that are highly insulated and utilize renewable energy sources. Dwight Arant is the sole member of Net Zero.

Thermocore of Missouri, LLC, ("Thermocore") was a manufacturing business that produced structural insulated panels as energy efficient building materials. Johannesmeyer was the majority member of Thermocore, and Thermocore's other members were two individuals and another LLC.[1] In 2018, Thermocore began negotiating a transaction to sell its business assets to Net Zero.

Thermocore and Net Zero executed an asset purchase agreement ("APA") on October 25, 2018. Under the APA, Thermocore agreed to sell certain assets to Net Zero in exchange for $1.2 million. The APA provided that the $1.2 million would be paid in installments, specifically, $30,000 was credited as an advance payment; $630,000 was to be paid at closing; $90,000 was due by December 31, 2018; and $450,000 was due by January 31, 2019. Thermocore fulfilled its obligations under the APA by transferring its assets to Net Zero, including Thermocore's real estate. Thermocore's employees became Net Zero's employees, so "it was basically the same operation under a different name." Thermocore received the $630,000 payment at closing, and it later received the $90,000 payment.

---

[1] The other LLC that was a member of Thermocore was Northern Lights Development Co., LLC, of which Johannesmeyer and Kathleen Johannesmeyer were members.

2

As for the $450,000 payment, the APA specifically stated "the balance of $450,000.00 shall be paid to Seller on or before January 31, 2019." The APA defined "Seller" to be Thermocore. Johannesmeyer, however, had arranged to buy out the other members of Thermocore. In a promissory note dated January 30, 2019, Net Zero agreed to pay $450,000, plus interest at five percent per annum, to Johannesmeyer, not Thermocore. The note provided that Net Zero was to pay Johannesmeyer interest only for 18 monthly installments of $1,875, with the first payment due on February 1, 2019. A final payment of $450,000 was due on the last day of the month 18 months after the initial payment was made.

At Johannesmeyer's request, the APA contained a provision stating Thermocore "will receive all cash on hand in the business at the time of closing. [Thermocore] will be paid for all inventory in the business at cost and will receive the difference between accounts payable and accounts receivable." Johannesmeyer believed "cash on hand" in this provision included $260,000 in customer deposits for jobs yet to be completed, so he retained that amount. Net Zero thought it was receiving the $260,000 in customer deposits to complete the remaining customer contracts.

According to Johannesmeyer, in addition to the APA and the promissory note, there was a separate oral contract in which Net Zero agreed to pay him $12,000 per month for 12 months in exchange for his consulting services. He could not identify the date of the oral contract, any explicit offer or acceptance, or when the term of the consulting contract started. Johannesmeyer asserted he performed the consulting work as requested but received "very little, if . . . anything at all" in renumeration for his services.

3

After Net Zero failed to make any of the scheduled payments on the $450,000 promissory note, Johannesmeyer filed a petition in the circuit court. In Count I, he asserted a breach of contract claim against Net Zero and Arant, alleging they breached the APA and the promissory note by failing to make the required payments on the note. In Count II, Johannesmeyer asserted a claim of fraud against Arant. In Count III, Johannesmeyer asserted a breach of contract claim against Net Zero and Arant for failing to pay him for his consulting services under the terms of the oral employment contract.

In response, Net Zero and Arant filed an answer and counterclaim for breach of contract. In its counterclaim, Net Zero and Arant alleged Johannesmeyer breached the APA by retaining the $260,000 customer deposits as "cash on hand." Arant, in his individual capacity, moved for partial summary judgment on all counts against him. The circuit court granted the motion, leaving Johannesmeyer's breach of contract claims in Counts I and III against Net Zero and Net Zero's breach of contract counterclaim against Johannesmeyer for trial.

A bench trial was held in April 2024. At the close of Johannesmeyer's case, Net Zero moved for a judgment on all claims. The court dismissed Johannesmeyer's claim for breach of the APA on the basis that Thermocore, not Johannesmeyer, executed the APA and, therefore, only Thermocore, who was not a party to the case, could assert such a claim. The court further found Johannesmeyer failed to make a prima facie case for breach of the oral contract for consulting fees. The court rejected Net Zero's arguments that Johannesmeyer lacked standing to sue for breach of the promissory note and that there was no consideration for the promissory note.

4

Following the trial, the court entered its judgment. The court found Net Zero created standing for Johannesmeyer through pleading in its counterclaim that Johannesmeyer entered into the APA. The court found Net Zero waived the lack of consideration defense by failing to plead it and, further, that Johannesmeyer, as a member of the LLC, "may well have required the payment to sign the APA." The court also found Net Zero suffered a loss by not receiving the $260,000 in customer deposits. Consequently, the court determined Net Zero was liable to Johannesmeyer for the $450,000 promissory note, but it offset Net Zero's liability by the $260,000 in customer deposits not transferred to Net Zero. Therefore, the court entered a judgment in favor of Johannesmeyer and against Net Zero for $190,000, plus post-judgment interest. Net Zero appeals.

## STANDARD OF REVIEW

In this bench-tried case, we will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the circuit court's findings of fact. *Dunton & Assocs., LLC, v. A & J Printing*, 647 S.W.3d 584, 590 (Mo. App. 2022). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c). We will affirm the judgment "if it is correct on any ground supported by the record, regardless of whether the trial court relied on that ground." *Curtis v. Mo. Democratic Party*, 548 S.W.3d 909, 918 (Mo. banc 2018) (citation

5

omitted). We are "primarily concerned with the correctness of the result, not the route taken by the trial court to reach it." *Id.* (citation omitted).

## ANALYSIS

In Point I, Net Zero contends the circuit court erred in granting Johannesmeyer's claim for breach of the promissory note because the court erroneously declared or applied the law by finding Johannesmeyer had standing to sue.

Standing is an issue of law, which we review *de novo*. *CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012). A party has standing if they have "'a legally cognizable interest in the subject matter' and a 'threatened or actual injury.'" *Deutsche Bank Nat'l Trust Co. v. Vaughn*, 524 S.W.3d 193, 197 (Mo. App. 2017) (quoting *U.S. Bank, N.A. v. Smith*, 470 S.W.3d 17, 23 (Mo. App. 2015)). Missouri has adopted the Uniform Commercial Code ("UCC"), which governs commercial transactions. *Id.* at 198. "Application of the UCC is straightforward regarding the question of who may enforce" a promissory note. *Id.* (quoting *U.S. Bank Nat'l Ass'n v. Burns*, 406 S.W.3d 495, 497 (Mo. App. 2013). Pursuant to Section 400.3-301,[2] the holder of a negotiable instrument is entitled to enforce it. *Id.* "A holder is one (1) who possesses the instrument, and (2) to whom the instrument is made payable." *Burns*, 406 S.W.3d at 497 (citing § 400.1-201(b)(21)(A)).[3] Here, it is undisputed Johannesmeyer possessed the promissory note,

---

[2] All statutory references are to the Revised Statutes of Missouri 2016, as updated through the 2024 Cumulative Supplement.

[3] *Burns* cites Section 400.1-201(20), RSMo 2000. Following the statute's amendment in 2017, this definition of "holder" is now in Section 400.1-201(b)(21)(A).

and the promissory note was made payable to him. He was the holder of the note under Section 400.1-201(b)(21)(A), and under Section 400.3-301, he was entitled to enforce it.

Net Zero argues that, because the APA was between Net Zero and Thermocore only, and the APA and promissory note were part of the same transaction, we should find that only Thermocore had standing to enforce the promissory note. Citing the principle that documents that are part of the same transaction should be "construed together, even in the absence of explicit incorporation, unless the realities of the situation indicate that the parties did not so intend," *Johnson ex rel. Johnson v. JF Enterprises, LLC*, 400 S.W.3d 763, 767 (Mo. banc 2013)(internal quotation marks and citation omitted), Net Zero argues we should interpret the promissory note as actually being payable to Thermocore, not Johannesmeyer.

Here, "the realities of the situation" indicate the parties did not intend for the promissory note to be payable to Thermocore. While we agree that the APA and promissory note were part of the same transaction and should be construed together, this does not mean that we should interpret – and essentially rewrite – the terms of the promissory note in a way that is contrary to the note's plain, unambiguous language. "A promissory note is a written contract for the payment of money." *Luebbert v. Simmons*, 98 S.W.3d 72, 77 (Mo. App. 2003) (citation omitted). "The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Wilson Mfg. Co. v. Fusco*, 258 S.W.3d 841, 844 (Mo. App. 2008) (quoting *Dunn Indus. Group v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003)). When the

7

language of the contract is not ambiguous, "we determine the parties' intent from the contract alone." *Id*.

Per the express written terms of the promissory note, Net Zero and Johannesmeyer agreed and intended that the $450,000 final payment plus interest would be payable in installments to Johannesmeyer, not Thermocore. As the holder of the note, Johannesmeyer had a legally cognizable interest in Net Zero's breach of the promissory note and suffered the actual injury of not receiving any of the payments due under the note. Therefore, the court did not erroneously declare or apply the law in finding Johannesmeyer had standing to assert the breach of contract claim against Net Zero. Point I is denied.

Net Zero's two remaining points concern its defense of lack of consideration for the promissory note. In Points II and III, Net Zero challenges the court's determinations that it waived the lack of consideration as an affirmative defense and that there was sufficient evidence of consideration. Because it is dispositive, we will address only Net Zero's challenge to the sufficiency of the evidence of consideration.

When, as in this case, a party admits execution and delivery of a promissory note, "the law imports a consideration; consequently, the holder of the note is not required to prove consideration." *Dunton & Assocs*., 647 S.W.3d at 589 (quoting *Hunt v. Smith*, 992 S.W.2d 303, 306 (Mo. App. 1999)). Specifically, Section 431.020 provides, "All instruments of writing made and signed by any person . . . whereby he shall promise to pay any other . . . any sum of money . . . shall import a consideration, and be due and payable as therein specified."

8

This statutory presumption is rebuttable, however.  *Dunton & Assocs.*, 647 S.W.3d at 589.  "[A] party who signs an instrument but claims it is not supported by consideration can prevail by pleading and proving a lack or failure of consideration."  *Id.* (footnote omitted)(citations omitted).  To overcome the statutory presumption, "the maker must prove the lack or failure of consideration by clear, cogent, and convincing evidence."  *Hunt*, 992 S.W.2d at 306.  "[T]he question of whether the maker of a note overcame the presumption of consideration is an issue of fact."  *Id.*

Net Zero argues that only Thermocore, and not Johannesmeyer, transferred anything of value, *i.e.*, assets, land, contracts, and property, in exchange for the $450,000 due under the note.  Because Johannesmeyer did not individually transfer anything of value to Net Zero and admits he did not personally advance $450,000 to Net Zero, Net Zero argues this "wholly negates any finding of consideration."

As discussed in Point I, Net Zero gave this promissory note to Johannesmeyer as part of the larger transaction of the sale of Thermocore's assets to Net Zero.  It is undisputed that, per the APA, the parties intended a $450,000 payment to be the final portion of the $1.2 million sales price for Thermocore's assets.  Net Zero presented no evidence whatsoever that the $450,000 promissory note made payable to Johannesmeyer was for anything other than payment of the outstanding balance on the assets' sales price.  In fact, Arant recognized the $450,000 promissory note was given as payment for the purchase of Thermocore's assets.  Arant testified that, once he learned Thermocore had retained the $260,000 customer deposits as "cash on hand," he unilaterally decided Net Zero was going to offset the payments on the promissory note for that amount.  Because

9

the "realities of the situation" do not indicate a contrary intent by the parties, the APA and the note should be construed together; thus, the consideration for the note was the same as that for the APA.

That the promissory note was made payable to Johannesmeyer instead of Thermocore does not negate the consideration for it. The circuit court found that, as a member of the LLC, Johannesmeyer "may well have required the payment to sign the APA." Net Zero does not challenge this finding. When asked specifically why the promissory note was made payable to him individually as opposed to Thermocore, Johannesmeyer explained, "Because I had to get rid of the name as soon as I sold the company, Thermocore[,] I couldn't use." Additionally, the evidence showed Johannesmeyer had arranged to buy out the other members of Thermocore. The circuit court did not err in implicitly finding Net Zero did not overcome the statutory presumption that the promissory note was supported by consideration. Points II and III are denied.

### CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.